GILBERTO A. PAGÁN LAMOLLY, Plaintiff and Appellant, *v.* EUGENIO A. GUARDIOLA and THE MARYLAND CASUALTY Co., Defendants and Appellees.

No. 11136. Argued April 7, 1954.—Decided June 8, 1955.

*J. Alemañy Sosa* for appellant. *F. Fernández Cuyar* and *Rafael A. González* for appellees.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Gilberto A. Pagán, student of the College of Agriculture

and Mechanical Arts of the University of Puerto Rico, was invited by Eugenio A. Guardiola, also a student of said College, to go with him to the town of San Germán, where both lived. It seems that Guardiola frequently picked up his schoolmates to drive them to San Germán in a pick-up truck which he owned, and drove himself. Upon reaching the town of San Germán and while traveling up-hill at the entrance of the town, Guardiola found it necessary to reduce his speed when he met a vehicle parked to the right and another pick-up that was going down-hill in the opposite direction. The driver of the pick-up truck which was going down-hill decided to give way to Guardiola's pick-up. In order to pick up speed, Guardiola had to accelerate his truck by shifting into second gear, which gave a violent jerk to the open platform of the pick-up truck, where Pagán was standing holding on to the guard rails, together with other schoolmates. The jerk hurled Mr. Pagán from the platform to the pavement where he lay unconscious.

Gilberto Pagán filed a civil action to recover compensation for physical injuries, loss of studies, moral suffering, physical pain and mental anguish (meaning moral damages or *pecunia doloris*, or according to the accurate definition of Puig Peña "moral damages of an evident patrimonial repercussion"). Guardiola answered, alleging among other special defenses, contributory negligence (*compensación de culpas*) and an unfortunate or inevitable accident (fortuitous case).

The civil action was heard before the former trial court of Mayagüez. In its findings of fact and conclusions of law, it stated as a finding of fact that "as a matter of fact . . . the jerk of the vehicle by reason of the change in speed, although felt in the open platform, was not such as to imply that said operation was negligently performed by the driver" and as a conclusion of law that "the accident, according to the evidence, was unfortunate or inevitable," whereupon it denied the claim for damages. Furthermore, it made a pro-

nouncement of possible contributory negligence, in stating: "the plaintiff, a person *sui juris*, realizing the natural danger of traveling on the open platform of a pick-up truck should have taken the same measures taken by his other schoolmates who held on to the guard rails of the pick-up so as not to be thrown out by any movement of the vehicle."

The trial court was correct in holding that the owner or driver of a private vehicle has the same duty to preserve the life of an invitee as the life of any other occupant of a private vehicle who is not his invitee. It would be specious, within the standards of normality and order in a civilization, to establish a rule by which the driver of an automobile or its owner, in those cases where the owner is liable, .may exercise a lesser degree of diligence because of the fact that the person riding in his automobile is his invitee. As the Supreme Court of Spain has properly stated: "the obligation to pay damages for a wrongful act flows, in the quasi-delictive sphere, from the lack of prudence or diligence which is normally due in the ambit of human coexistence." Judgment of October 20, 1950; 32 *Jur. Civ.* 53 *et seq.*; (*Instituto Editorial Reus*, 1953 ed.). Sections 1802 and 1803 of our Civil Code make no distinction between the relation of a gratuitous invitee and the driver or owner and any other relation: 4 Castán, *"Derecho Civil Español, Común y Foral"*, 775 *et seq.*, (*Instituto Editorial Reus*, 1952 ed.; IV–2 Puig Peña, *"Tratado de Derecho Civil Español"*, 561 *et seq.*, (*Editorial Revista de Derecho Privado*, 1951 ed.); 7–Oyuelos, *"Digesto"* 678 *et seq.*, (*Cuerpo de Derecho Español*, 1932 ed.). The same theory prevails in those state jurisdictions of the United States where a different rule has not been legislated. *Guillory et ux* v. *Perkins*, 6 So. 2d 177, 178, (Dore) (1942); 60 C.J.S. 977, §§ 399(1), 399(3), 399(5); 5 Am. Jur. 626, § 230; 4–1 Blashfield, *Cyclopedia of Automobile Law and Practice* 344, § 2311, (Vernon Law Book Company and West Publishing Co., 1946 ed.; 1954 Supplement, p. 45); Fowler Vincent Harper: "A Treatise

on the Law of Torts", pp. 158, 170, §§ 69 and 74, (The Bobbs-Merrill Company, 1933 ed). We have not examined the problem of assumption of risk, or that of the objective liability applicable to traffic accidents (*res ipsa loquitur*), manifest act from which the damage may be inferred, because they are not included in this case.

■ The evidence was contradictory as to each and every particular of negligence or wrongful act. We cannot say that there are not proven facts on which the trial court could not make a finding as to contributory negligence the way it did. Therefore, we shall respect its authority in weighing the evidence as well as in drawing conclusions on the juridical effects of the proven facts.

The judgment of the lower court will be affirmed.